UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

---

COX'S PARADISE, LLC,

    Plaintiffs,

v.                                                    No.  1:25-cv-01080-JDB-jay

THE CHARTER OAK FIRE                    JURY DEMANDED
INSURANCE COMPANY,

    Defendant.

---

### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

Comes now the Cox's Paradise, LLC ("Plaintiff"), by and through undersigned counsel, by and through the undersigned counsel, hereby files their Motion for Summary Judgment against Defendant, The Charter Oak Fire Insurance Company ("Defendant"), that the claimed damage to the subject property was the result of a weather event that occurred on March 31, 2023.

### MEMORANDUM OF LAW IN SUPPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### I.    STANDARD FOR SUMMARY JUDGMENT

1.    The United States Supreme Court has addressed the standard for summary judgment as set forth in Federal Rule of Civil Procedure 56(c), as follows:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986).

2. After the moving party has met this initial burden, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, (1986). Fed. R. Civ. P. 56(e), however, does not permit the nonmoving party to avoid summary judgment by resting on the pleadings, but "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. The mere existence of a scintilla of evidence in support of the non-movant's position is insufficient; there must be evidence on which the jury could reasonably find for the non-movant on a material fact. *Anderson*, 477 U.S. at 251-52.

## II. THE CLAIMED DAMAGE TO THE SUBJECT PROPERTY WAS THE RESULT OF A WEATHER EVENT THAT OCCURRED ON MARCH 31, 2023.

3. The reporting of the severe weather event was captured in real time by an employee of Plaintiff, Amanda Agnew. See Exhibit C attached to Affidavit of Amanda Agnew.

4.     The storm and subsequent damage was observed by Curtis Webb, the director of maintenance for the property tenant, Pratt Industries. *See Affidavit of Curtis Webb.*

5.     The water intrusion was not minor or isolated. Based on what Mr. Webb personally observed, the water intrusion was significant and affected areas where machinery, equipment, cardboard inventory, and/or materials used in the cardboard-box manufacturing process were located. *Id.*

6.     The amount and scope of the water intrusion caused concern that the machinery, equipment, inventory, raw cardboard materials, and/or finished cardboard products were being damaged or were at immediate risk of damage. *Id.*

7.     Before the March 31, 2023, wind and/or hail event, Mr. Webb had not observed water intrusion of the same amount, scope, or severity at this property. *Id.*

8.     The water intrusion observed after the March 31, 2023, event was materially different from any prior condition Mr. Webb had observed at the property. *Id.*

9.     Mr. Howard's review of the photographic evidence provided and his on-site observations on February 18, 2026 identify conditions consistent with wind-related distress at metal panel seams. Such conditions can permit water intrusion into the building envelope when exposed to wind-driven rain. *See Affidavit of James Howard.*

10.     As shown in the referenced figures in Mr. Howard's report, reported seam conditions appear at multiple locations across the roof surface. Seams on metal panel roofing are critical to watertight performance and durability and must accommodate thermal movement while resisting wind-induced forces. *Id.*

11.     The review of the structure and available photographs indicates conditions consistent with wind-related distress. *Id.*

12.     In a letter dated June 24, 2024, from Dan Wells, General Adjuster, the following is listed as a reason for Charter Oak Fire Insurance Company's denial of coverage. "We also reviewed the engineering report from EMC Structural Engineers dated March 8th, 2024, from an inspection that took place on October 11, 2023." In this report, the engineer relied upon the meteorologist's conclusion, noted above, that the highest wind speed was 58 mph. This conclusion appears to be in error. It is clear from the video and affidavits from Amanda Agnew and Curtis Webb that a significant weather event was recorded on March 31, 2023. *See Exhibits B and C of James Howard Affidavit and Affidavits from Amanda Agnew and Curtis Webb.*

13.     Dan Wells, the Defendant's adjuster, relied on the meteorological report commissioned by Defendant, despite the apparent absence of due diligence regarding the historic, nationwide tornado outbreak that affected the subject property. The Storm Prediction Center published 593 storm reports within a week

of the outbreak, and this information was readily available online before Defendant denied the claim based on the referenced report. *See Exhibits B of James Howard Affidavit*

14.    However, Mr. Howard's review of the EMC Structural Engineers report, on page 50 of this same report, found the following photograph (Figure 6) labeled "Photograph 89: Typical side lap screws". *See Exhibits A and C and James Howard Affidavit.* This damage is consistent with the forensic signature of wind pressure on metal roofing systems. This is the same damage noted by Dr. Phelps in multiple photos labeled "fish mouth uplifted roof panel ribs." *See Report attached to Affidavit of Matt Phelps*.

15.    The referenced photograph depicts a metal panel lap seam secured with a mechanical fastener that appears to have experienced displacement consistent with uplift-type forces. In addition, visible debris present within the opened seam is consistent with exposure to wind and airborne particulates. These observations were considered in conjunction with Mr. Howard's site observations, other photographic materials, and the weather-related information described elsewhere in this report. *See James Howard Affidavit.*

16.    Based on the conditions observed during the February 18, 2026, site inspection and the materials reviewed, it is clear that the subject roof system

exhibits physical conditions consistent with wind-related distress at metal panel seams.

17.    It is further clear that the observed seam-related conditions are, more likely than not, related to the reported weather event on or about March 31, 2023, as described in his report, when considered in conjunction with the weather-related information summarized herein and the reported timing of observed changes to the roof system.

18.    There is no genuine dispute of fact that seam displacement and related discontinuities, where present, can permit water intrusion during wind-driven rain events and may adversely affect the roof system's long-term watertight performance.

## CONCLUSION

14.    Thus, based on the investigation and the findings described in Mr. Howard's report, the subject roof system has sustained physical damage that is more likely than not directly related to the reported weather event on or about March 31, 2023. Therefore, the Loss is covered under the Policy.

WHEREFORE, Plaintiff respectfully requests that the Court grant this motion finding that (1) the claimed damage to the subject property was the result of a weather event that occurred on March 31, 2023, (2) the Loss is covered under the Policy, and (3) grant any other relief that is just and proper.

Respectfully submitted,

By: /s/ Michael Katz
Michael Katz, Esq.
FL Bar No. 1024707
INSURANCE LITIGATION GROUP, P.A.
*Attorney for Plaintiff*
1500 NE 162nd Street
North Miami Beach, FL 33162
Telephone: (786) 529-0090
Facsimile: 866-239-9520
E-Mail:mkatz@ilgpa.com,
service@ilgpa.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of July 2026, the foregoing document is being served this day on all counsel of record: Matthew S. Ponzi, Esq., and Reagan N. Brock, Esq., of Foran Glennon Palandech Ponzi & Rudolff PC, at mponzi@fgppr.com and rbrock@fgppr.com via electronic service and/or electronic mail.

*/s/ Michael Katz*
Michael Katz, Esq.